**CUPPLES–HESSE CORPORATION,**
Plaintiff-Appellant,

v.

**Del L. BANNISTER, Collector of Revenue, City of St. Louis, Missouri, and Harold Jaeger, Assessor of the City of St. Louis, Missouri, Defendants-Respondents.**

No. 46962.

Supreme Court of Missouri,

Division No. 1.

March 9, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied April 13, 1959.

Fordyce, Mayne, Hartman, Renard & Stribling, Joseph Renard, Robert P. Stanislaw, St. Louis, for appellant.

Charles J. Dolan, Acting City Counselor, Thomas F. McGuire, Associate City Counselor, David S. Hemenway, Asst. City Counselor, St. Louis, for respondents.

VAN OSDOL, Commissioner.

This is an action in equity instituted by Cupples-Hesse Corporation, plaintiff, against defendants, Collector and Assessor of the City of St. Louis, to enjoin the collection of portions of property taxes levied or to be levied on plaintiff's real estate for the taxable year 1957 and certain subsequent taxable years.

Plaintiff alleged that portions of the taxes are unconstitutional, and that the remedies provided in Sections 138.180, 138.-430(2), 138.470(4); and Const., Art. V, § 22, and 536.100 RSMo 1949, V.A.M.S., are not adequate, certain and complete under the facts alleged in the petition. In paragraph 14 of the petition, plaintiff stated that it had not exhausted any statutory remedy available under the laws of the State of Missouri with respect to the assessments of 1957 and subsequent years for the reason that plaintiff, if it had resorted to the statutory remedy would have been and would be subjected to a "multiplicity of litigations" involving the same valuation of plaintiff's real estate. Defendants, Collector and Assessor, filed their motion to dimiss which was sustained by the trial court on the ground "that plaintiff has failed to pursue the proper statutory remedies as provided" by the Statutes and the provisions of the Constitution, supra, and "that said statutory remedies * * * are adequate, certain and complete." Plaintiff has appealed from the order of dismissal.

In its petition plaintiff alleged it was and is the owner of described industrial properties located in St. Louis and that during and for the taxable year 1955 the land was assessed by defendant Assessor at $40,240 and the improvements on the land were assessed at $662,760; that on or about May 1, 1956, the Assessor notified plaintiff that the assessed value of the land had been changed as of January 1, 1956, by increasing the assessment thereof to $95,360 and that the improvements were assessed for the year 1956 at $662,760;

that at all times it had been the practice of the Assessor in assessing real property to physically inspect and value the same at intervals of five years or more, and to carry such valuation forward each year on the assessment rolls until changed by order of some competent authority; and that plaintiff is informed and believes that it is the intention of the Assessor to continue such practice in the years to come.

Plaintiff further alleged that the 1956 assessment of plaintiff's land was based entirely on the valuation of the year 1955 except as the valuation was modified by the St. Louis Board of Equalization in 1956; that a portion of the 1956 assessment of improvements on part of plaintiff's lands was based solely on a valuation of the improvements in the year 1946, except as the valuation had and has been modified by the State Tax Commission in 1948 and by the St. Louis Board of Equalization in 1956; that the 1956 assessment of improvements on the remaining portion of plaintiff's land was based solely on the valuation of improvements in 1947, and carried forward from year to year on the assessment rolls, except as that valuation was modified by the Board of Equalization in 1956.

It was alleged that, with respect to the assessment of the 1956 tax, plaintiff had instituted timely appeal proceedings under the provisions of the Statutes supra, and upon hearing by the Board of Equalization the assessment on plaintiff's land was reduced in the amount of $3,350 and in the amount of $60 on the improvements, and upon appeal to the State Tax Commission the decision of the Board of Equalization was affirmed; and that, in December, 1956, plaintiff filed its petition for review of the decision of the State Tax Commission.

(Although it is not disclosed in the instant transcript on appeal, we note from defendants' brief that the Circuit Court of the City of St. Louis rendered a judgment, October 29, 1958, affirming the decision of the State Tax Commission; that

plaintiff appealed from the stated judgment of the Circuit Court; and that the proceeding involving the 1956 tax is now pending in this Court on appeal.)

It was further alleged by plaintiff in its petition in the instant case that defendant Assessor in the year 1957 assessed plaintiff's land at $92,010 and the improvements at $662,700; that the 1957 assessment was made solely by carrying forward the assessment of plaintiff's real estate for the year 1956 to the assessment rolls for the year 1957, and that in fact the assessment for 1957 was based entirely on the valuations made in the manner and at the times mentioned, and that the true value of the real estate for tax purposes for the year 1957 was $40,240 for the land, and $462,000 for the improvements thereon.

Plaintiff further stated that the assessment on the described land for the year 1957 was not in compliance with the law, and that the assessment should be set aside and the property reassessed for the following stated reasons,

"(a) The assessment of said land is discriminatory, arbitrary, and oppressive, because the Assessor systematically failed to adjust the assessed value of residential land and commercial land in the City of St. Louis and in the immediate area wherein the above-described land lies, in proportion to the assessed value placed upon plaintiff's aforesaid land by said Assessor, and because the Assessor systematically failed to adjust the assessed value of other industrial land within the same area in proportion to the increased assessed value placed upon plaintiff's land as aforesaid.

"(b) The said assessment is in violation of Section 3 of Article X of the Constitution of the State of Missouri, which requires that taxes 'shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.'

"(c) Said assessment is in violation of the Fourteenth Amendment of the Con-stitution of the United States, because it attempts to deprive and deny to plaintiff the equal protection of the laws.

"(d) The formula and method applied and used by the Assessor and later approved by the State Tax Commission are arbitrary, illegal, unjust and oppressive."

Plaintiff further stated that the buildings and improvements were not assessed in compliance with the law, and that the assessment should be set aside and the same reassessed for the following stated reasons,

"(a) Lack of uniformity exists between the respective assessed values placed upon each of the several buildings of said property, and between the assessed value placed upon such buildings and upon other buildings in the same district and industrial area, in this that the ratio of assessment to reproduction cost in the case of specific buildings on plaintiff's property varies widely from the ratio of assessment to reproduction cost in the case of other buildings on plaintiff's property and in the case of buildings on other properties in the district and in the same industrial area.

"(b) In fixing the assessed value of buildings and improvements upon said property, the Assessor failed to take into consideration the depreciated value of said buildings and improvements.

"(c) That in assessing the buildings and improvements upon plaintiff's property and upon other industrial land in the same district and area, the Assessor has applied a formula wherein the reproduction cost prevailing in the year 1942 is used as a basis for such formula, whereas in assessing improvements and buildings or residential property in the City of St. Louis and within the same district wherein plaintiff's property lies, the Assessor has applied a formula wherein the reproduction cost prevailing in the year 1927 is made the basis thereof.

"(d) That the assessment of the buildings and improvements upon plaintiff's property

is in violation of Section 3 of Article X of the Constitution of the State of Missouri, because such assessment and the tax levied thereon is not uniform with that of other property of the same class in the City of St. Louis and in the district wherein plaintiff's property is located; that said assessment is in violation of the Fourteenth Amendment of the Constitution of the United States, as it attempts to deprive and deny plaintiff the equal protection of the laws."

As stated in plaintiff's petition, prior to the institution of the instant action, plaintiff had not exhausted the statutory remedy available to it under the provisions of the Statutes and the Constitution, supra, with respect to the 1957 assessment, and plaintiff avers that it has not pursued the remedy so provided as to that assessment, because if plaintiff must submit to the valuation in issue in the 1956 proceedings during the pendency of the appeal of those proceedings, "plaintiff will be subjected to a multiplicity of litigations involving the same valuation of plaintiff's real estate, and * * * all of the said actions can be obviated by one proceeding in this (circuit) Court restraining the collection of the disputed portion of the tax until the said appeal is finally determined and a decree entered thereon adjudging the validity or invalidity of the disputed assessment." It was further stated that the instant action will not intolerably impede the State's collection of revenue in that plaintiff will tender and pay defendant Collector each year, until a final determination of all issues, that portion of the taxes assessed against plaintiff's real estate which is based on what plaintiff contends is its true value, and in that the situation in which plaintiff finds itself is not likely to recur with any degree of frequency; and that plaintiff has no adequate remedy at law save by this action "in that if plaintiff pays the full amount of taxes claimed * * * for the year 1957, and it is subsequently determined in this proceeding that the amount thereof is excessive, discriminatory and void as alleged * * *, plain-

tiff could not obtain a refund of said excess tax; and * * * if plaintiff refuses to pay any of the taxes claimed * * * on or before December 31, 1957, it will be subjected to penalties and interest, and a cloud will be cast on its title to its land, all of which will cause plaintiff irreparable injury."

Plaintiff prayed (a) that the court adjudge that the 1957 assessment and all assessments in subsequent years during the pendency of this action, which are based solely on the 1956 assessment, are unconstitutional, illegal, void, and of no effect, to the same extent as the 1956 assessment is unconstitutional, illegal, void and of no effect; or that the court set aside the assessment for 1957, and for subsequent years during the pendency of this action, which are based on the aforesaid 1956 assessment, and direct a reassessment according to law; (b) and (c) that pending the determination of this action on the merits a portion of monies tendered by plaintiff shall be paid to defendant Collector, and that he be required to accept such sum ($16,875.26)— the amount plaintiff claims is the correct amount of the tax yield if the property had been properly assessed—and the remainder of the monies tendered ($8,483.01) to be received into the registry of the court until further court order; (d) that pending the determination of this action, a temporary and final injunction shall issue enjoining the defendant Collector from collecting further sums on account of the 1957 assessment; (e) that, after notice and hearing, plaintiff be adjudged to incur no liability by way of penalty or interest on that portion of the 1957 real property tax as is represented by the difference between the amount ($16,875.26) admittedly due, and the amount claimed by defendants; and (f) that the court make such further orders and grant plaintiff such other and further relief as the court may deem just and proper.

Our question is—in the situation as stated in plaintiff's petition, may a taxpayer having failed to avail himself of the statutory

(legal) remedy with respect to a claimed illegal, fraudulent or unconstitutional assessment in a subsequent taxable year or in subsequent taxable years, but who had pursued the statutory remedy with reference to taxes assessed for a preceding taxable year, resort to a court of equity for relief on the ground of prevention "of a multiplicity of suits" and restrain the collection of the taxes for a subsequent taxable year or for subsequent taxable years until the final decision in the statutory remedial proceeding instituted with respect to the assessment of the stated preceding taxable year? Plaintiff-appellant has framed our question in another way—"Must a taxpayer who finds himself in the situation confronting appellant, submit his claim each year to the State Tax Commission, or be forever barred from relief against the annual imposition of a tax unconstitutional in part? Appellant contends that he need not and that a Court of Equity should on these facts exercise its lawful jurisdiction to enjoin collection of the illegal portion of the tax."

█ It must be conceded that ordinarily the legal remedial procedure provided by the Statutes and the Section of the Constitution mentioned supra affords the taxpayer adequate remedies for complaints of fraud, illegality or discrimination in the assessment of taxes for a given year and that such procedure must ordinarily be availed of by the taxpayer before a resort to equitable relief. Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 19 S.W.2d 746; Id., 328 Mo. 836, 42 S.W.2d 23; Washington University v. Baumann, 341 Mo. 708, 108 S.W.2d 403; Wiget v. City of St. Louis, 337 Mo. 799, 85 S.W.2d 1038, 100 A.L.R. 1284; Boonville Nat. Bank v. Schlotzhauer, 317 Mo. 1298, 298 S.W. 732, 55 A.L.R. 489, as clarified and supplemented in Brinkerhoff-Faris Trust & Savings Co. v. Hill, supra, 323 Mo. 180, at page 194, 19 S.W.2d 746, at page 752; State ex rel. Merritt v. Gardner, 347 Mo. 569, 148 S.W.2d 780; Baumann v. Sheehan, 8 Cir., 140 F.2d 747.

It also must be conceded that the legal remedy so provided would have been adequate, certain and complete with respect to the assessment for the taxable year 1957 had plaintiff availed itself of it with respect to the assessment for that year; but, of course, as is averred by plaintiff, plaintiff each year would have been required to avail itself of the statutory remedy with respect to each of the assessments for 1957 and subsequent taxable years; consequently, plaintiff has sought to invoke the doctrine that a court of equity may take cognizance of a controversy in order to prevent a multiplicity of suits. Vol. 1, Pomeroy's Equity Jurisprudence, 5th Ed., § 243 et seq.

Plaintiff argues that since it had but one choice as to its remedy with reference to the assessment of 1956, and having challenged the validity of the formulas and methodology utilized by defendant Assessor in the years 1946, 1947 and 1955, on which it is alleged the assessment of 1956 was based, and having successively appealed from the several and adverse decisions rendered in the 1956 statutory proceedings and, since in 1957 and during the pendency of the 1956 proceedings, defendant Assessor assessed plaintiff's property by the same formulas and methodology which are contested in the 1956 proceedings now pending upon appeal, plaintiff should now be entitled or permitted to avail itself of the power of a court of equity to be exercised on the ground of the prevention of multiplicity of actions, and thus stay the collection of the tax for the year 1957, and subsequent years pending the final determination of the 1956 litigation. It is conceded by plaintiff, as intimated, that it could have attacked each assessment each subsequent year by availing itself of the same statutory remedy; however, plaintiff says, this choice left plaintiff "faced with the prospect of litigating numerous successive action involving the same parties and identical questions of law and fact. The only alternative route to relief was the (instant) action * * * in equity to enjoin collection of the illegal portion of each year's tax

in the years subsequent to 1956 which (action) was predicated on the inadequacy" of plaintiff's remedy at law.

Plaintiff principally relies on Begley v. Mississippi Valley Trust Co., Mo.Sup., 252 S.W. 84; Brinkerhoff-Faris Trust & Savings Co. v. Hill, supra, 323 Mo. 180, 19 S. W.2d 746; and Washington University v. Baumann, supra. In the Begley case plaintiffs sought to enjoin a defendant, holder of a note, from instituting and dismissing and reinstating or reinstituting actions against plaintiffs as endorsers. Plaintiffs stated a claim or cause of action in equity. The intention of defendant to thus harass plaintiffs was not left to conjecture by the pleadings, and, because of which harassing, intermittent and dilatory procedures, the evidence supporting the defense might have been lost, or the plaintiffs, in their defense, otherwise put to disadvantage and inconvenience. This court in the first Brinkerhoff-Faris decision (323 Mo. 180, 19 S.W. 2d 746) refused equitable relief on the theory that plaintiff had stood silently by and failed to avail itself of the relief afforded by statutory procedure; however, such procedural relief became available only after overruling the case of Laclede Land & Improvement Company v. State Tax Commission, 295 Mo. 298, 243 S.W. 887, in that very Brinkerhoff-Faris decision. Had the complete statutory remedy been actually available to plaintiff in the Brinkerhoff-Faris case (as such a remedy was available to instant plaintiff) as this court in that case supposed, the first decision of the Brinkerhoff-Faris case, refusing equitable relief, would have been correctly ruled. So considered, the Brinkerhoff-Faris case does not tend to support plaintiff's contention here. In Washington University v. Baumann, supra, the plaintiff was afforded relief in equity without having resorted to statutory procedure. This equiable relief was granted on the ground of plaintiff's contractual charter right to immunity from taxes, superior to taxing law. Taxation of its property would have been a violation of its charter right to tax immuni-

ty. Plaintiff would have been subjected annually to tax aggressions if it had paid the taxes exacted by the taxing authority upon property which actually was immune from taxation. Plaintiff's numerous parcels of land would have been affected. Plaintiff would have been involved in a multitude of litigations which could be obviated in one proceeding. Title to plaintiff's land would have been clouded, and plaintiff would have suffered irreparable injury. Of like effect are Morris Canal & Banking Co. v. Mayor, etc., of Jersey City, 12 N.J.Eq. 227; and Bank of Kentucky v. Stone, C.C., 88 F. 383. In former litigation these respective plaintiffs had been held exempt from taxation. Plaintiff in our case does not state its claim on the theory that the taxing officials were acting beyond their jurisdiction or powers, or that the assessments were made on property immune or exempt from taxation, or were made vexatiously. It is true that plaintiff in the instant case did not stand silently by and permit the taxing officials to assess and levy taxes and then institute the instant equitable action after the taxes were due as in the Brinkerhoff-Faris case, which delay, said this court in that case, constituted laches. Apparently, plaintiff in our case, deliberately chose not to avail itself of the statutory remedial procedure with respect to the assessment of 1957, and apparently with respect to subsequent years, and chose to institute this action in equity, as stated, on the sole ground of the prevention of a multiplicity of suits.

In these connections, we return to the theory of plaintiff that the several assessment proceedings constitute successive or simultaneous similar actions at law against the instant plaintiff, all depending upon similar issues of fact and involving the same legal questions so that the decision of one would virtually be a decision of all the others. With respect to this class of cases and the incidence of the question of invoking the jurisdiction or power of a court of equity to interfere and restrain and thus prevent a multiplicity of suits, Pomeroy has said that a court of equity "may"

interfere and restrain the prosecution of the actions, so that the determination of all the matters in issue between the two parties may be brought within the scope of one judicial proceeding and one decree, and a multiplicity of suits may thereby be prevented. But it was further said that it "must be admitted that this exercise of the equitable jurisdiction is somewhat extraordinary, since the rights and interests involved are wholly legal, and the substantial relief given by the court is also purely legal. It may be assumed, therefore, that a court of equity will not exercise jurisdiction on this particular ground, unless its interference is clearly necessary to promote the ends of justice, and to shield the plaintiff from a litigation which is evidently vexatious. * * *". Vol. 1, Pomeroy's Equity Jurisprudence, 5th Ed., § 254, p. 505.

■ We think it important to note that defendant Assessor has the duty of assessing property each year (Section 137.080 RSMo 1949, V.A.M.S.), and that each year's assessment constitutes an independent proceeding and judgment. Boonville Nat. Bank v. Schlotzhauer, supra. In taxation matters it has been observed that the doctrine of *res judicata* is of but limited application, inasmuch as the assessment for each year is an independent determination for that year. Each year's tax is a separate transaction and each action relating to each year's tax is a new cause of action. In re Breuer's Income Tax, 354 Mo. 578, 190 S. W.2d 248; Young Men's Christian Ass'n of St. Louis and St. Louis County v. Sestric, 362 Mo. 551, 242 S.W.2d 497. It is not clearly seen that the issues of law and fact in the assessment of the 1956 tax were or are to be all the same in assessing the taxes for 1957 and for the stated subsequent years, even though, as alleged, the "formulas and methodology" utilized by the Assessor in 1956 were or are to be utilized by the Assessor in the assessments for 1957 and subsequent years. It has been said that the weight of authority supports the proposition that the determination of value of property for taxation on a particular date is not conclusive as to value on a subsequent date. Annotation 150 A.L.R. 5, at page 79.

In fact, even "limited" application of the doctrine of *res judicata* could not presently be available to plaintiff. No final decision has been rendered in the 1956 proceeding. Plaintiff merely anticipates that the final decision in the 1956 proceeding upon appeal may be favorable to plaintiff. And, if plaintiff is permitted to maintain this equitable action and if upon appeal the 1956 proceeding is determined favorably to plaintiff, this instant proposed equitable litigation likely would be involved and prolonged in the determination of the extent to which the final decision upon appeal of the 1956 proceeding should affect the court's decision in the instant case and affect, upon remand, the assessments or reassessments for 1957 and subsequent years. Thus, in this case and in cases involving similar situations in taxation, would the orderly coordinated statutory legal procedures for taxation be delayed, frustrated, and thrown out of coordination, and taxation and the action of taxing officials unnecessarily subjected to the supervision of courts of equity.

■ We decline to reverse the trial court's order and to sanction the invoking of jurisdiction and intervention of a court of equity upon the facts stated here.

The trial court's order and judgment of dismissal should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.