**WESTGLEN VILLAGE ASSOCIATES,
Appellant,**

v.

**George LEACHMAN, Collector of
Revenue, Respondent.**

**No. 64394.**

Supreme Court of Missouri,
En Banc.

Aug. 16, 1983.

---

David J. Newburger, Susan Spiegel, Newburger & Vossmeyer, St. Louis, for appellant.

Timothy L. Grosch, Thomas W. Wehrle, Clayton, for respondent.

John B. Williams, Michael F. Dandino, Kansas City, John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for amici curiae.

HAROLD L. LOWENSTEIN, Special Judge.

On March 2, 1982 Westglen Village Associates filed a petition in the Circuit Court of St. Louis County to recover real estate taxes paid under protest, naming Leachman, the County Collector as the defendant. Apartments, the income producing property in question, were assessed at $599,260 for 1981. The taxes of $37,235.61 were paid under protest by Westglen on December 30, 1981 pursuant to § 139.031.[1] In its protest letter to the collector which was also attached to its petition, Westglen alleged the assessment was as a result of "overreaching" by the assessor because the assessor did not base his decision on the property's true value in dollars as gleaned from its earning power. Westglen also felt the assessment of value as applied to it, 33⅓% was greater than the other properties in the county, averaged at 18½%; that by not recognizing the income producing quality of property an unconstitutionally impermissible discrimination was worked upon owners of rental property; and the county officials here forced taxpayers such as themselves to waste time and dollars to litigate their rights thus discouraging any such appeals.

Defendant Leachman's motion to dismiss stated that plaintiff, Westglen, pursuant to § 139.031, had indeed filed suit within 90 days of payment of the tax under protest, but had failed to exhaust its administrative remedies for relief to the Board of Equalization and then to the State Tax Commission (§§ 137.385, 138.030, 138.100, 138.430 RSMo.) Leachman's motion was sustained and this appeal followed.

Westglen basically argues that a taxpayer may litigate an "equal protection claim under § 139.031 without prior exhaustion of administrative remedies." Westglen says this really isn't a "valuation" case, it is a question of how the results were reached, i.e. from "overreaching" and then the government inhibiting anyone from complaining; that constitutional issues should be handled by the courts under § 139.031 therefore making administrative agency action as to valuing individual parcels unnecessary. This approach would excuse Westglen's failure to seek relief before the Board of Equalization and the Tax Commission. Jurisdiction is in this court to construe revenue laws. Mo. Const. Art. V, § 3.

■ Westglen's first point, in essence, is that an allegation of "overreaching" by a

1. All statutory references are to Revised Statutes of Missouri Supp. 1982.

taxpayer excuses the taxpayer from pursuing administrative remedies. It bases this entire theory on language in the opinion of *C & D Inv. Co. v. Bestor,* 624 S.W.2d 835 (Mo. banc 1981), which says at page 838, "where, as is the case here, there is no question of overreaching by the taxing authorities . . .". *C & D* does not excuse Westglen's volitional failure to pursue administrative remedies. Here, as in *C & D,* the taxpayer's complaint is as to not the result but the method used to reach the result; however, methods of valuation of property are delegated to the expertise of administrative agencies, *C & D Inv. Co., supra,* at 838. The Board of Equalization could have reduced the valuation, and the Tax Commission could correct assessments held to be unlawful, unfair, etc., *Id.* at 838. This statutory system for administrative review of assessments may not be pre-empted by the courts for action only under § 139.-031. *Id.* at 836.

*John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59 (Mo.1974) presents the reverse of the situation here—the taxing authority failed to give notice of the increased assessment to the taxpayer, and a suit to recover taxes paid under protest under § 139.031 was not an adequate remedy. The assessment on real estate was increased from $500 to $225,500 (without notice being given to the taxpayer) and consequently with no opportunity to appeal to the Board of Equalization. In *John Calvin Manor* the taxpayer's action was to enjoin collection of taxes by the collector and assessor. In holding a remedy solely under § 139.031 inadequate, this court held the circuit court in an action to recover taxes paid under protest, ". . . does not have the power to afford the same or similar relief to a landowner that a Board of Equalization and the State Tax Commission have. Section 139.-031 does not invest the court with the discretionary authority to fix the value or assess the property at any specific amount. The foregoing is set forth in order to demonstrate that § 139.031 is not a substitute for the long-standing provisions in law relating to the assessment of property for tax purposes." *John Calvin Manor, Inc., supra,*

at 63–64. *Cf. McGraw-Edison Company v. Curry,* 485 S.W.2d 175 (Mo.App.1972).

"Thus it is seen that sec. 139.031 affords the landowner a method whereby he can litigate the legality of the tax and avoid interest and penalties should the decision go against him.

It does not appear, however that the legislature intended to abrogate those remedies existing prior to the enactment of sec. 139.031 nor to make the procedure set forth in sec. 139.031 the exclusive remedy available to a taxpayer."

517 S.W.2d at 63.

It should be noted that Westglen's petition asked for judgment on $37,235.16 paid under protest, and did not ask for relief on $10,645.71 paid without protest. This amount not protested was based on Westglen's allegation this would be the tax on $133,238 which it had determined to be the correct valuation.

Another instance where this court did not require exhaustion of the administrative process occurred in *Naegele Outdoor Advertising Company, Inc. v. Kansas City,* 509 S.W.2d 128 (Mo.1974) where, in violation of our constitution, the city assessor assessed the property at a higher value than did the county. When the taxpayer received its county bill and realized the city had increased the assessment, the tax had already been paid and the taxpayer was precluded from administrative remedies. The taxpayer was there excused from this administrative procedure, as was done in *John Calvin Manor, supra,* because action by the taxing authority precluded the taxpayer from pursuing administrative remedies.

It would seem that overreaching as described in *C & D, supra,* is typified by the factual situations in *John Calvin Manor* and *Naegele, supra,* which mitigate toward the granting of equitable relief and excuse use of administrative remedies because unavailable.

Westglen's contention of this case is not being a "valuation" case is incorrect. A taxpayer may not voluntarily forego administrative remedies by alleging unconstitu-

900

tional "overreaching" by the taxing authority in arriving at the assessment.

■ Similarly, in a suit against the state for recovery of taxes, statutorily provided administrative procedures must be utilized exclusively, and must be followed to exhaustion even where constitutional claims are raised. *Ellsworth Freight Lines, Inc. v. Missouri Highway Reciprocity Commission,* 568 S.W.2d 521 (Mo. banc 1978). *See, B & D Investment Company, Inc. v. Schneider,* 646 S.W.2d 759, 762 (Mo. banc 1983) (where administrative remedies are adequate that remedy is ordinarily exclusive). *See also Cupples-Hesse Corporation v. Bannister,* 322 S.W.2d 817 (Mo.1959), (a pre-139.031 case for injunctive relief on yearly real estate assessments where the taxpayer desired to forego continued administrative remedies; it was held statutory remedial procedure affords the taxpayer adequate remedies and must ordinarily be availed of before asking for equitable relief).

Westglen's additional argument about the duplicity of requiring proceedings in court and through administrative channels, though skillfully presented, is ruled against it. The situation here does not lend itself to allow a taxpayer to voluntarily avoid exhausting administrative remedies. Section 139.031 permits the taxpayer to avoid interest and penalties on taxes while allowing the expertise of local Boards and the State Tax Commission to come into play and provide relief if justified. *Calvin, supra,* at 63. *Accord: State ex rel. Cassilly v. Riney,* 576 S.W.2d 325 (Mo. banc 1979). Section 139.031 is not here a remedy independent of administrative review. The assessment made here was not done beyond the powers of discretion of the local taxing authorities.

■ When a challenge is made to a tax assessment, the procedure as outlined in *Xerox Corporation v. Travers,* 529 S.W.2d 418, 422 (Mo. banc 1975) should still be followed. That procedure involves 1) paying taxes under protest and filing a statement with the collector, 2) within 90 days filing suit in circuit court, and, 3) if appeal is made to the Missouri State Tax Commis-

sion the taxpayer is to notify the collector and the circuit court to have that action stayed until the proceedings are finalized.

There is no authority to allow Westglen to allege constitutional infirmities to avoid pursuing and exhausting its administrative remedies. Only where the taxing authority has made it impossible for the taxpayer to take advantage of the administrative routes of appeal has this requirement been excused.

Westglen's pleadings, liberally construed and given every reasonable intendment, invoke no principles of substantive law entitling it to relief. The judgment of the trial court is affirmed.

RENDLEN, C.J., and HIGGINS, GUNN, BILLINGS and BLACKMAR, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

WELLIVER, J., not sitting.

DONNELLY, Judge, dissenting.

In *Sioux City Bridge Company v. Dakota County, Nebraska,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923), the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment protects a taxpayer against the imposition of a discriminatory tax.

The principal opinion holds that relief from the imposition of a discriminatory tax is conditioned in Missouri upon utilization of an appeals procedure through local boards of equalization to the State Tax Commission. *See* § 138.430, RSMo 1978.

I doubt that the teaching of *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) can be ignored in a situation, as here, where:

(1) The imposition of a discriminatory tax is federal constitutional error; and

(2) The principal opinion holds, in effect, that because § 138.430 appeal procedure has not been pursued, appellant has foregone its opportunity to raise its claim of constitutional error.

In my view, the following *Henry* issues should be resolved:

(1) Did appellant *deliberately bypass* the § 138.430 appeal procedure?

(2) If appellant did not *deliberately bypass* such procedure, does today's holding serve *a legitimate state interest?*

I respectfully dissent.